NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0117n.06

Case No. 20-6166

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Mar 15, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| MAJENTA MOOTOOR, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| EASTERN KENTUCKY UNIVERSITY, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | O P I N I O N |

Before: MOORE, COLE, and NALBANDIAN, Circuit Judges.

COLE, Circuit Judge. In 2016, Majenta Mootoor began her graduate studies in the Occupational Therapy program at Eastern Kentucky University ("EKU"). But she was dismissed two years later, after committing two safety violations within two days at her fieldwork site. Mootoor, after exhausting her administrative remedies, filed suit against EKU contending that she was dismissed solely because of her documented learning disability. She also alleged that, prior to her removal from the program, EKU faculty and staff failed to accommodate her disability, retaliated against her for notifying the Office of Equity and Inclusion about their failure to accommodate her disability, and that her dismissal breached a contract brokered between her and the university.

EKU moved for summary judgment on all counts. The district court concluded that Mootoor had failed to provide sufficient evidence to support her claims and demonstrate that there

was a genuine dispute of material fact for trial. Mootoor appeals, arguing that the district court erred in finding that she did not present a genuine dispute of material fact as to whether she received accommodations in graduate school and whether she was retaliated against. Because Mootoor cannot point to any evidence in the record to support her claims, we affirm.

## I. BACKGROUND

### A. Factual Background

After successfully completing an associate degree, Mootoor transferred to EKU in Fall 2014 to complete her bachelor's degree. Mootoor's advisor, Renee Causey-Upton, became worried about Mootoor's health and demeanor after seeing her conduct in class and reading her work. It was only after Causey-Upton reached out that Mootoor reported that she had an undeclared learning disability. Causey-Upton advised Mootoor to contact the Office of Services for Individuals with Disabilities to determine what, if any, accommodations were needed to support her.

After testing, Mootoor received accommodations that would follow her throughout her career at EKU. Mootoor was granted double time on her examinations and was permitted to have her exams read aloud to her, either by her instructor or a text-to-speech software. Professors were also to make themselves available to Mootoor so she could ask clarifying questions during an exam if she so chose. During class, Mootoor was permitted to record lectures and have a copy of the lecturer's prepared notes, if they were available. For other assignments, Mootoor's professors were encouraged to provide her with extra clarification and support at her request.

Despite her accommodations, Mootoor experienced several academic setbacks and discouraging feedback. Causey-Upton met with Mootoor almost every semester regarding her poor performance. She also relayed that Mootoor's academic performance might be a sign that

she should explore other, less rigorous, options within the College of Health Sciences. Causey-Upton and other professors had concerns based not only on Mootoor's academic performance in her undergraduate courses, but also on Mootoor's "soft skills", such as communication and critical thinking. Causey-Upton specifically advised Mootoor that the accommodations she received for written work could not compensate for poor communication skills.

Be that as it may, Mootoor's grades improved throughout her undergraduate career. She applied—and was admitted—to EKU's Occupational Therapy ("OT") graduate program. Causey-Upton even wrote Mootoor a letter of recommendation highlighting her development as a student. Mootoor enrolled in that program in Fall 2016.

Mootoor, however, struggled in graduate school, which she attributed to not receiving accommodations. Her first semester of graduate school, Mootoor took academic courses with professors Elaine Fehringer and Dana Howell. Although Mootoor alleged that each failed to accommodate her, her primary concerns were with Howell. Mootoor met with Howell to discuss her accommodations early in the semester, but she alleged that these accommodations were never actually implemented.

As part of Howell's class, students were required to complete in-class competency exams. These exams asked students to draft "SOAP" notes summarizing their observations about a patient at the end of a session. The "S" in "SOAP" stands for "subjective," "O" represents "objective," "A" represents "assessment," and "P" denotes "plan." In Howell's course, Mootoor asserted that her accommodations were not implemented because she was required to complete her SOAP notes in-class, without the assistance of a computer or her read-write software. Howell did, however, permit Mootoor to take as much time as she needed. Even so, Mootoor alleged she was distressed

by the other students around her who completed their SOAP notes more quickly, although she never expressed her discomfort to Howell. It was the policy of the department to alert students who received a grade lower than a "B" by email. While Mootoor did eventually pass the course, she was notified mid-semester that her grade in Howell's class was a "C-."

Mootoor's academic struggles continued in her fieldwork courses in Fall 2017 and Spring 2018. To graduate, EKU requires OT candidates to complete several fieldwork rotations, where students receive hands-on training under the supervision of a licensed Occupational Therapist. The first level of fieldwork includes both an on- and off-campus component. For her Fall 2017 OTS 871 course ("Fieldwork I"), Mootoor's grade depended on an averaged numerical score based on a rubric from her academic professor, Leslie Hardman, and her site supervisor, Jamica Richards. Mootoor was graded on a scale of one (does not meet expectations) to four (superior performance) on 42 performance items. The goal of the course was to ensure that students could demonstrate professional skills on the job, such as problem-solving, flexibility, time management, and collaboration with other individuals, in addition to performing well on more structured assignments.

On October 1, 2017, Hardman gave Mootoor extensive feedback on her SOAP notes over email. The following day, Hardman realized that this format might not be accessible to Mootoor and asked how Mootoor would prefer to receive feedback. Mootoor requested feedback through Zoom, which she received later that week.

Despite the additional feedback, Mootoor performed poorly on re-writes of her SOAP notes. Therefore, on October 9, 2017, she requested a meeting with Hardman to receive further guidance on how to format her SOAP notes as a reasonable accommodation. Hardman agreed to work with Mootoor. But, in the same message, Hardman sought clarification about whether these

kinds of meetings were expected with all assignments, and whether Mootoor required additional time to complete said assignments. Mootoor interpreted this to mean that Hardman was inquiring why she had or needed accommodations.

Once they met, Hardman explained that Mootoor was expected to think more critically and address the big picture of a client's status in her SOAP notes. Hardman also noted that, because Mootoor had difficulties identifying her own errors in her writing, working with clients—in this case, children—who had developmental delays that also affected writing could be challenging. Hardman emailed a summary of the meeting to Mootoor and Mootoor's fieldwork coordinators. Hardman, however, informed Mootoor that it was her responsibility to appraise her site supervisor, Richards, of any accommodations she required. Nevertheless, Mootoor believes that Hardman called Richards behind her back and discussed her disability.

The following day, Mootoor sent an email to the Office of Equity and Inclusion. She expressed concerns about her performance in Hardman's course and claimed that she was not receiving accommodations. Mootoor stated that she was not receiving Zoom accommodations, that she was concerned that Hardman was discussing Mootoor's academic performance with her tutor behind her back, and that Hardman had also accused Mootoor of not completing her revised work on her own. Mootoor did not seek additional feedback from Hardman again before the course's end.

On November 10, 2017, Mootoor received her final Fieldwork I grade of 105.5—below the expected score of 126 and the passing minimum of 122. Richards and Hardman were required to explain why Mootoor received the grade she did for each of the 22 areas where one or both instructors assigned her a score below three (meets expectations). In her explanation, Richards rarely mentioned Mootoor's SOAP notes or written communication, other than to note that she

was overly focused on her abilities in those areas, to the detriment of her participation with her classmates and clients. Richards felt that this evinced a general problem of Mootoor fixating on one or two minor details, tasks, or assignments, to the exclusion of others. Mootoor allegedly displayed a rigid and formulaic approach to clinical work and appeared to lack initiative unless she felt her grades were in jeopardy. Richards also noted that Mootoor never preemptively asked for assistance or clarification. She always waited until there was a problem to reach out.

For her part, Hardman found that Mootoor was an ineffective and quiet communicator who needed to improve her problem-solving skills. Hardman noted that while Mootoor could succeed in structured academic environments she struggled in situations with less structure, like her field site. Hardman also noted that Mootoor's fixation on her SOAP notes caused her to miss opportunities to participate with her classmates and clients, resulting in a poor grade in the course. In sum, Hardman noted that although Mootoor "tries very hard . . . . [s]he has poor insight for addressing her deficits in content knowledge, assessment, analysis, and leadership skills." (Fieldwork I Grades, R. 25-27, PageID 253.) Although both professors found that Mootoor engaged positively with clients and worked hard, they ultimately gave her a failing grade.

Generally, students who fail to pass Fieldwork I are not permitted to advance to OTS 845 ("Fieldwork II"), resulting in removal from the graduate program. Mootoor vehemently disagreed with most of the feedback underlying her grade and believed that her grade was "determined based on [her] disability not on [her] ability." (OTS 871 Grade Appeal, R. 25-29, PageID 290.) Mootoor unsuccessfully appealed her grade. But, through an arrangement brokered by the Office of Equity and Inclusion, EKU agreed to administratively withdraw Mootoor and re-enroll her in a new, expedited Fieldwork I course in Spring 2018 so that she could complete only those components she had failed without Hardman's or Richards's involvement. Mootoor was informed, however,

that if she failed Fieldwork I again, it would count as her second failure rather than her first, which would result in her dismissal from the program.

Once Mootoor successfully completed the portions of Fieldwork I she had to retake, she moved on to Fieldwork II. This time, she was placed at the Lexington Veterans Affairs Medical Center (the "VA"). Her placement began February 15, 2018. Mootoor once again received accommodations at EKU, including the ability to type her SOAP notes using a read-write software, provided they were emailed to her clinical instructor no later than the following morning. Some faculty, however, expressed concern that Mootoor's field site would not be able to implement some of her accommodations due to the nature of the VA's documentation system and encouraged her to contact her site coordinators to be sure. Mootoor was once again informed that it was her responsibility to pass along her accommodations letter to her fieldwork supervisor, if she chose to discuss her accommodations at all.

While at the VA, Mootoor's fieldwork coordinator, Casey Humphrey, was contacted by her site supervisor, Jeff Healander. Healander was concerned about Mootoor's ability to complete her site work, even with the accommodations she was granted. Humphrey made plans to visit the VA to address Healander's concerns, but before she could do so, Mootoor was dismissed from the site for two safety violations.

The first violation occurred on February 27, 2018, while Mootoor was at a book club with VA clients. All the clients had dementia, except for a man with a prosthetic who just enjoyed the socialization the book club brought. Mootoor and another intern were sitting with the clients when one client left the room and began running down the hall. The other intern left to retrieve the client. When Mootoor attempted to follow, the man wearing the prosthetic decided he wanted to come with her but refused to use his wheelchair. Mootoor did not prevent him from walking with

her or prevent him from leaving the room. Because Mootoor failed to use the proper precautions to ensure the man would not fall, she was reprimanded.

The second violation happened the following day. Mootoor and a client were building a bird feeder using a power drill. The client grazed his hand on the drill, causing him to bleed. Mootoor allegedly failed to take the proper precautions to clean up his blood afterwards. Healander told Mootoor that he could lose his OT license over the incident and instructed her not to return.

Because Mootoor was removed from her placement, her only options were to fail Fieldwork II or withdraw. Mootoor was unable to withdraw at that point in the semester, and therefore failed the class. Mootoor once again filed a grade appeal, blaming her failure on a lack of supervision and a lack of accommodations. Mootoor also informed the Office of Equity and Inclusion that she did not receive proper accommodations. The grade was upheld. The Office of Equity and Inclusion separately found no evidence or information to support the conclusion that Mootoor failed Fieldwork II for reasons that implicated EKU's Non-Discrimination and Harassment Policy, or that she was retaliated against for her previous complaint.

Mootoor's final recourse was to appeal to the Fieldwork Management Committee and department chair. The Fieldwork Management Committee declined to offer Mootoor an opportunity to repeat the course, and thus she was removed from the program.

**B. Procedural History**

On November 15, 2018, Mootoor filed a complaint in Madison Circuit Court in Madison County, Kentucky, claiming that EKU failed to provide her with reasonable accommodations during her academic career, violating the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., the Rehabilitation Act ("RA"), 29 U.S.C. § 701 et seq., and the Kentucky Civil

Rights Act ("KCRA"), Ky. Rev. Stat. § 344.010 et seq. Mootoor also alleged that she was the victim of retaliation and that her dismissal from the OT graduate program was a breach of the agreement that was made to allow her to retake her Fieldwork I course.

On February 18, 2020, EKU filed a motion for summary judgment, which the district court granted. *Mootoor v. E. Ky. Univ.*, No. 5:18-cv-645, 2020 WL 5633847 (E.D. Ky. Sept. 20, 2020). The district court concluded that Mootoor had failed to point to evidence, outside her own deposition testimony, to support her claims that she did not receive accommodations or was dismissed for any reason other than her safety violations at the VA. *Id.* at *8. The district court similarly found that Mootoor failed to establish a prima facie case of retaliation because she did not establish a causal link between her grades in her fieldwork courses and her Office of Equity and Inclusion complaints. *Id.* at *9–10. As to Mootoor's breach of contract claim, the district court determined that Mootoor once again failed to submit supporting proof for her claim, thus entitling EKU to summary judgment. *Id.* at *11–12.

Mootoor timely appealed.

## II. ANALYSIS

We review an order granting summary judgment de novo, viewing the evidence and drawing all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Nevertheless, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

**A. Disability Discrimination**

Mootoor alleges that the district court impermissibly reversed the summary judgment standard and viewed the facts and law in favor of EKU, rather than Mootoor as the non-moving party. Mootoor contends that the facts and circumstantial evidence demonstrate that EKU failed to provide her with reasonable accommodations that would allow her to be successful in her coursework. While Mootoor discusses her undergraduate history at length, on appeal she cabins her argument solely to her time in the OT graduate program.

"[C]laims brought under the KCRA are interpreted consistently with the standards developed under the ADA." *Bryson v. Regis Corp.*, 498 F.3d 561, 574 (6th Cir. 2007). To establish a prima facie case of disability discrimination under the ADA and KCRA, Mootoor must demonstrate that she has a disability, that she was "otherwise qualified" to participate in her graduate program, and that she was discriminated against or denied the benefits of the program because of her disability—in this case, by a failure to accommodate her. *Sjostrand v. Ohio State Univ.*, 750 F.3d 596, 599 (6th Cir. 2014); *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 435 (6th Cir. 1998). The standard is identical under the RA, apart from the causation factor. The RA "bars differential treatment 'solely by reason of' an individual's disability[.]" *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 315 (6th Cir. 2012). The RA also applies only to programs or institutions that receive federal assistance. *Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 241 (6th Cir. 2019).

The parties concede that Mootoor was disabled and that EKU receives federal funding, but dispute whether Mootoor was "otherwise qualified" for the graduate program and whether she was discriminated against. A student is "'otherwise qualified' to participate in a program if she can meet its necessary requirements with reasonable accommodation." *Kaltenberger*, 162 F.3d at 435

(quoting *Sandison v. Mich. High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1034 (6th Cir. 1995)). However, the accommodation need only be "reasonable"—institutions are not required "to lower or to effect substantial modifications of standards to accommodate a handicapped person." *Id.* at 436 (quoting *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 413 (1979)).

Even viewing the facts in the light most favorable to Mootoor, Mootoor cannot establish that she would have been able to meet EKU's academic standards with her accommodations for two reasons.

First, the record demonstrates that her accommodations were, in fact, implemented. Mootoor relies on her own word and her pleadings to demonstrate that her accommodations were not implemented. The pleadings themselves are not proper evidence on a motion for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Mootoor's testimony here is insufficient to demonstrate a genuine issue of material fact that would warrant a trial. EKU demonstrated through the testimony of instructors, meeting notes, and Mootoor's own testimony that her accommodations were implemented throughout her undergraduate and graduate career.

This is true even in her fieldwork courses. For Fieldwork I, the record demonstrates that Mootoor received extensive feedback over Zoom and in writing from Hardman. Mootoor's own deposition testimony contains her personal reaction to Hardman's feedback. While Mootoor believes that if Hardman were more comforting rather than strict, she would have done better, Mootoor's accommodations required only that Hardman provide additional feedback upon request. They said nothing about the way the feedback was given.

Mootoor also alleges that Richards failed to accommodate her in the same course. Mootoor, however, fails to provide evidence that Richards knew she required accommodations.

Mootoor—not EKU—was required to pass along her accommodations letter to her instructor. Mootoor was resistant to the idea that Richards might find out that she needed accommodations. Indeed, when asked whether she told Richards that she needed accommodations, Mootoor equivocated and stated that she believed her performance with Hardman was more important than her performance with Richards. According to Richards, she was not notified that Mootoor required accommodations until Mootoor began to perform poorly in Fieldwork I. *See Kaltenberger*, 162 F.3d at 437 (college was not obligated to provide accommodation until plaintiff had provided a proper diagnosis and requested specific accommodation).

For Fieldwork II, Healander was aware that Mootoor had accommodations, and said he could meet them. Healander provided Mootoor additional time to complete her notes and said he could live with her spelling and grammar mistakes. But it was her lack of clinical reasoning and safety issues—not her written work product—that resulted in her dismissal her from her placement.

This leads to the second fatal flaw in Mootoor's argument. She has not established that she could succeed at EKU even with her accommodations. Mootoor received accommodations that provided her with extra time and assistance with her written work product. Yet, in both fieldwork courses she that failed, Mootoor performed unsatisfactorily in areas unaddressed by her accommodations.

Mootoor's Fieldwork I and II grades were based on her performance in seven categories: fundamentals of practice, positive attitude, time management, professional communication, respect of others, ability to function as a team member, and professional responsibility. Even excluding those skills that address written expression, in Fieldwork I Mootoor scored a two (needs improvement) in 18 skills, including at least one skill in each group. In Fieldwork II, Mootoor

only "met expectations" in five skills, all housed under "professional behaviors," and was dismissed after only a week and a half at the placement site.

Other factors, unrelated to her writing, impacted Mootoor's Fieldwork II grades. As Healander described it, Mootoor was dismissed from the VA field placement early because of "[c]oncerns for her safety as well as the safety of those that she works with in clinic." (Fieldwork Performance Evaluation, R. 25-1, PageID 120.) Mootoor received a score of one (unsatisfactory) in adherence to ethics, because she failed to safeguard the personal identification of veterans. These concerns were compounded by the two safety violations Mootoor committed while at the VA.

Mootoor admits that these two incidents occurred and had nothing to do with her accommodations, but contends that EKU had a duty to investigate them before dismissing her.

EKU's OT handbook explicitly provides:

> If a student receives unsatisfactory ratings in any of these fundamental areas of <u>adherence to ethics, safety regulations or judgment in the use of safety</u> on the Level I or Level II performance evaluation, the student will not be offered an opportunity to repeat the Level I and/or Level II Fieldwork until after careful consideration by the Fieldwork Management Committee, and the Department Chair.

(Occupational Therapy Graduate Student Handbook, R. 25-2, PageID 130.) The Committee twice voted not to permit Mootoor to retake her fieldwork courses because of her performance issues and safety violations. Whether the Committee correctly determined that Mootoor should not be eligible to re-take her Fieldwork II course or sufficiently investigated the alleged safety incidents goes to the substance of EKU's academic decision-making—an area where courts "should show great respect for the faculty's professional judgment." *Kaltenberger*, 162 F.3d at 436 (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985)).

Mootoor contends that this decision is not entitled to deference because it was motivated by discriminatory animus. Other than her own unsubstantiated allegations in her pleadings, Mootoor provides no evidence to indicate that her disability played any role in the Committee's decision-making process.

Because Mootoor's accommodations were implemented, and she still performed unsatisfactorily, she was not otherwise qualified for EKU's graduate program. *Kaltenberger*, 162 F.3d at 437. Without any evidence of discriminatory animus, summary judgment in favor of EKU is warranted on this issue.

### B. Retaliation

Mootoor alleges that EKU retaliated against her in violation of Kentucky law when she filed a complaint with the Office of Equity and Inclusion regarding EKU's failure to implement her accommodations. Section 344.280 of the KCRA prohibits two or more people from conspiring "[t]o retaliate or discriminate in any manner against a person because [she] . . . has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation[.]" Ky. Rev. Stat. Ann. § 344.280(1). Claims under the KCRA's retaliation provision are interpreted consistently with federal law. *See Brooks v. Lexington-Fayette Urban Cnty. Hous. Auth.*, 132 S.W.3d 790, 802 (Ky. 2004).

To succeed on her retaliation claim, Mootoor must show that (1) she engaged in a protected activity; (2) EKU knew of that activity; (3) EKU took an adverse action against her; and (4) there was a causal connection between the protected activity and the adverse action. *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014). It is undisputed that Mootoor's complaints are a protected activity, that EKU was aware of her complaints, and that dismissal from the graduate

program constituted an adverse action. Mootoor, however, has failed to establish a causal link between the filing of her complaints and her dismissal.

Mootoor alleges that there was an ongoing conspiracy to remove her from the EKU graduate program. In support of this argument, Mootoor points to the concerns faculty had during her undergraduate career about her performance. She contends that this question may be resolved only after a jury is presented with all the facts. Without more, Mootoor's retaliation claims suffers from the same problem as her discrimination claim—there is simply not evidence to support it.

Mootoor emailed the Office of Equity and Inclusion after she was dismissed from her fieldwork course for committing two safety violations. Therefore, it is impossible for her complaint to have motivated her dismissal from the VA. The final decision to dismiss her from EKU was made later by the Fieldwork Management Committee. Even assuming that the temporal proximity between her complaint and subsequent removal were enough to establish Mootoor's prima facie case, EKU has articulated several "'legitimate nondiscriminatory' reason[s] for its action[s]," which negate that inference. *Ky. Ctr. for the Arts v. Handley*, 827 S.W.2d 697, 699 (Ky. 1991).

Mootoor was dismissed from the OT graduate program due to her safety violations, an area of professional concern, as is noted by the OT handbook. Mootoor was also dismissed in accordance with EKU policy. Before dismissing her, the Committee reached out to Mootoor once in March and three times in May to encourage her to plead her case. Mootoor refused, and so the Committee voted to dismiss her. The Committee voted again, after receiving Mootoor's input, to dismiss her.

While Mootoor alleges that this decision was pretextual, she has not cited to any materials in the record to support her position. *See* Fed. R. Civ. P. 56(c)(1)(A); *Ky. Ctr. for the Arts*, 827 S.W.2d at 699. Accordingly, summary judgment was properly granted on this issue.

**C. Breach of Contract**

Mootoor has not challenged the district court's grant of summary judgment for EKU on her breach of contract claim. *Mootoor*, 2020 WL 5633847, at *11–12. Accordingly, she has forfeited this issue on appeal. *Watkins v. Healy*, 986 F.3d 648, 667 (6th Cir. 2021).

## III. CONCLUSION

The judgment of the district court is affirmed.